# WILLIAM A. BROWNING, PETITIONER.

Middlesex, July, 1899.

*Seizin — Lack of Record Title — Land Registration Act.*

In this case the Examiner files an adverse report. His objections to the title are twofold, first, that the record title is defective and second, that the possessory title is less than twenty years old. Both objections are well founded, and under ordinary circumstances either would be fatal to the petition. The circumstances of this case are very unusual however. The facts are as follows:

Good title to locus is found in 1850 in one Farnsworth. He went into insolvency in 1852 and title passed to his assignee one Boynton. Both Farnsworth and Boynton then disappeared and diligent search has failed to disclose any trace of either of them except as to one distant relative of Farnsworth. The administration of insolvency at that date was in the hands of Commissioners, some of whom returned their dockets and papers to the subsequently established Insolvency Court, while others did not. No records or papers in the Farnsworth case have been preserved in Suffolk County, and all of Mr. Commissioner Allen's records not now in the insolvency office are said to have been destroyed. All record of the names or claims of the Farnsworth creditors has therefore been lost.

At the time of the Farnsworth insolvency the assessors of Somerville kept no locality index or Street book; neither did they make any systematic examination of the records at the Registry of Deeds, but relied upon previous tax bills and such knowledge of local transfers as they themselves pos-

sessed. They therefore knew nothing of the insolvency of Farnsworth who was a non-resident, but continued to assess the property to him, and, when the taxes were not paid, the collector sold it as his estate. This sale was invalid for various reasons, and no possession seems to have been taken by the purchaser or those holding under him. The tax title, such as it was, passed to one Ranney in 1858, and in 1895 the petitioner (or the estate which he represents) in the course of acquiring all that could be found in the nature of a record title, secured a release from him. No taxes had been paid by Ranney on the property for at least twenty years.

The property at the time it was owned by Farnsworth was situated at the edge of a swamp and at the end of an uncompleted street. It formed a portion of one lot on a large tract which had been plotted into house lots, many of which existed upon paper only, and was of little value. No one was in actual occupation of it until about thirteen years ago. The evidence tended to show that from the abandonment of the property by the Farnsworth estate in 1854 until the streets were actually laid out and the land became marketable in 1872, the assessors did not attempt to tax it at all. Then efforts were made to find an owner, and after several unsuccessful attempts to collect from the estates of former owners, and two invalid tax sales, it was assessed in 1881, there being no occupant, to " owners unknown," and on the tax sale following this assessment, the subsequent tax titles based upon it, and the possession taken thereunder, the petitioner relies.

It is contrary alike to principle, policy and practice under the land registration act that a bad or defective or incomplete title should be brought into this Court, and decreed to be good. Defects of record, not defects of title are curable here. On the other hand it is one of the purposes of the registration law that the real title should be adjudicated upon, established and made a matter of record.

Good titles exist in Massachusetts which yet do not appear of record anywhere. Arnold *v.* Reed, 162 Mass. 438. A man who is in actual possession of land under a claim of ownership where there is no one who can lawfully dispute his right to so hold it, has every essential element of title under our law.

The old Anglo Saxon theory, or rather fact, of seizin was a fundamental principle of the common law, and is none the less a living part of the real estate law of to-day because in the daily practice of conveyancers it has become so obscured by the intricacies and ramifications of our record titles, that as Sir Frederick Pollock says " It is possible for even learned persons to treat it as obsolete." It is the right to immediate possession, not the ultimate determination of true ownership, with which the common law is concerned. The only proper question for the conveyancer is or should be " what is there of record to successfully interfere with the person now in possession and claiming title."

The Roman theory of true ownership has but little place in our law, in spite of the increasing and inevitable tendency of conveyancers under the present system of examining titles by searching the records, to drift, consciously or unconsciously, toward the principles of the Roman law, and to enquire first as to theoretical true ownership, and last, if at all, as to the rightfulness of the actual possession. It is the recognition and protection and pacification by the law of the righteous physical control actually existing, that constitutes " title " whether at common law or under our registration act. " The person in possession is prima facie the owner, and the only use of investigating the title is to show the nature of his estate. Most land owners have no knowledge what their title is, all they know is that they and those through whom they claim have had possession," says Sir Howard Elphinstone in an article on the English registration act. The common law has never had a procedure an-

swering to the Roman Vindication. He is the true owner who has the right to possess. Wellington v. Gale, 13 Mass. 483. " Actual enjoyment and control of land or goods (and) the recognition of peaceable enjoyment and control as deserving the protection of the law, are," says Sir Frederick Pollock in his address before the alumni of the Harvard Law School, " the points that stand in the fore front of the common law when we take it as presented by its own history and in its native authorities."

So far as the record title outstanding in the Farnsworth assignee is concerned, an assignee in insolvency is barred by statute from any proceeding at law or in equity touching property or right after six years from the time when the same might have been brought. Acts of 1895, Chap. 432. Moreover, as against both the assignee and Farnsworth the petitioner has, beside his tax titles, a decree under P. S. C. 176; though as to this last the examiner questions, with some reason, the value of a decree in personam against parties not within the jurisdiction of the Court.

On the whole then we have a possession peaceably and lawfully acquired; no valid adverse claims discoverable; an honest, and so far as possible a successful, attempt to get in all outstanding record interests; and an improvement of the property in the interests of the community; in fact everything except a " record title," and this the petitioner now seeks. We think him entitled to registration.

Decree accordingly.

Note — See Percival v. Chase, 182 Mass. 371 at 376, (1902). Hillis v. O'Keefe, 189 Mass. 139.